In re the ESTATE OF Harley R. PIERCE, Deceased, James W. Pierce, Personal Representative, Appellant,

v.

STATE OF MISSOURI DEPARTMENT OF SOCIAL SERVICES, Respondent.

No. WD 52743.

Missouri Court of Appeals, Western District.

May 26, 1998.

Douglass F. Noland, Norton, Norton & Noland, Kansas City, for appellant.

Lera L. Shemwell, Department of Social Services, Jefferson City, for respondent.

Before BRECKENRIDGE, P.J., and SMART and LAURA DENVIR STITH, JJ.

BRECKENRIDGE, Presiding Judge.

The Estate of Harley R. Pierce, through its personal representative, James W. Pierce, appeals from a $7,121.18 judgment in favor of the Department of Social Services on its claim against the estate for reimbursement of Medicaid expenses paid on behalf of Harley Pierce. The Estate contends that the trial court erred by granting the Department's claim because the Department failed to sustain its burden of proving that Mr.

Pierce's medical services were medically reasonable and necessary or were incurred on his behalf. The Estate also contends that the trial court erred by failing to apply certain new provisions of § 208.215, RSMo Cum. Supp.1996,[1] because the amended version of that statute involves procedural changes in Medicaid lien recovery and distribution which the Estate alleges are applicable retroactively to this case. This court finds that the Department sustained its burden of proving the amounts paid on Mr. Pierce's behalf. Additionally, although the amendment contained in § 208.215 is remedial in nature, it did not become effective until after the judgment was entered, so it will not be applied. The judgment of the trial court is affirmed.

The decedent, Harley R. Pierce, was a Medicaid recipient who made a total of five applications for public assistance benefits through the county office of the Division of Family Services. All were approved, although Mr. Pierce was required to "spend down" his resources until they were below the upper limit of eligibility for Medicaid health benefits. On August 30, 1991, while he was receiving Medicaid, Mr. Pierce broke his hip when he slipped and fell as he was leaving his dentist's office. Medicaid paid the cost of the medical services Mr. Pierce received for this injury. Mr. Pierce then brought a personal injury claim against the owner of the office as well as the dentist, but he died before resolution of his claim. After his death, the claim was settled through arbitration and the proceeds of the settlement were paid into Mr. Pierce's probate estate. The assets of the estate consisted solely of the proceeds from the settlement of the personal injury claim.

After the estate was opened, the Department filed a Medicaid claim for reimbursement of the Medicaid funds received by Mr. Pierce during his life. The Department's claim was filed pursuant to § 473.398, which creates a debt due the Department from a decedent's probate estate for all the public assistance funds paid to or on behalf of the

1. All references are to the Revised Statutes of Missouri Cumulative Supplement 1996, unless otherwise indicated.

decedent during his lifetime. Relying on this statute, the Department claimed a debt due in the amount of $7,121.18. The Estate contested the validity of the Department's claim and the case proceeded to trial in the Daviess County Circuit Court.

The trial on the Department's claim was held on February 8, 1996. At trial, the Department called two witnesses and offered several exhibits, including computerized Medicaid records. Susan Eggen, an estate recovery analyst with the Department, testified concerning the recordkeeping of the Department. She identified a document describing the cost data for the claim against the Estate. Relying on one of the computer-generated billing statements admitted into evidence as an exception to the hearsay rule under the Business Records Act, Ms. Eggen testified that the Estate owed the Department $7,121.18 for the Medicaid services it provided to Mr. Pierce. She arrived at this figure by matching Mr. Pierce's unique departmental identification number with expenses traced to that number. Ms. Eggen also testified that she was the custodian of these records and that Mr. Pierce's departmental identification number enabled her to accurately determine that $7,121.18 was spent on his behalf by the Department.

On cross-examination, the Estate questioned Ms. Eggen concerning her medical expertise. Ms. Eggen testified that she had no medical training, and that she had no personal knowledge of any medical treatment Mr. Pierce received or of his condition that necessitated the medical treatment. Furthermore, Ms. Eggen said that she could not judge whether any of the expenses incurred on behalf of Mr. Pierce were necessary or reasonable under any medical standard.

As its second witness, the Department called Debbie Hildenbrand, an income maintenance caseworker with the Division of Family Services. Ms. Hildenbrand described the general application procedure for Medicaid benefits. Ms. Hildenbrand testified that Mr. Pierce had applied for Medicaid benefits on five separate occasions and was approved each time, on the condition that he "spend down" his resources to fall within the upper limit of Medicaid eligibility. In addition, Ms.

Hildenbrand identified a departmental client number as Mr. Pierce's unique identification on the application for Medicaid benefits. She also testified that once assigned, this number never changed. This identification number matched the one Ms. Eggen indicated and showed that Mr. Pierce had applied for public assistance benefits. On cross-examination, Ms. Hildenbrand admitted that she possessed no medical training or expertise and could not testify concerning the necessity or reasonableness of the medical treatment Mr. Pierce received or the medical condition that precipitated it.

After hearing arguments from both sides, the trial court took the matter under advisement. Neither party requested findings of fact or conclusions of law. In its order, dated April 10, 1996, the trial court found: "Upon argument of counsel and evidence presented, the Court finds that the estate is indebted on the claim in the amount of $7,121.18." The Estate filed a timely appeal from the trial court's order.

On appeal of a court-tried case, under Rule 73.01, this court upholds the trial court's judgment unless there was no substantial evidence to support it, it is against the weight of the evidence, or the court erroneously declared or applied the law. *Vanderford v. Cameron Mut. Ins. Co.*, 915 S.W.2d 391, 392 (Mo.App.1996). In this case, there was no request for findings of fact or conclusions of law, and unless there is such a request and entry, "the trial court is presumed to have made findings in accordance with the decree entered and [its] judgment will be affirmed under any reasonable theory supported by the evidence...." *Green Acres Enterprises, Inc. v. Freeman*, 876 S.W.2d 636, 638 (Mo.App.1994).

As its first point on appeal, the Estate complains that the trial court erred by allowing the Department's claim for $7,121.18 because the Department failed to sustain its burden of proving that the Medicaid expenses were medically necessary and reasonable under the circumstances or that they were for the benefit of Mr. Pierce. The Estate argues that pursuant to relevant statutory and case law, the Department must prove that the Medicaid expenses were medi-

cally necessary and reasonable and for the benefit of the Medicaid recipient before the Department may recover any benefits paid on behalf of a claimant.

The Department's claim was filed pursuant to § 473.398, which allows the Department to recoup Medicaid benefits paid from a decedent's estate when a Medicaid recipient dies. The relevant provisions of § 473.398 are as follows:

1. Upon the death of a person, who has been a recipient of aid, assistance, care, services, or who has had moneys expended on his behalf by the department of health, department of social services, or the department of mental health, or by a county commission, the total amount paid to the decedent or expended upon his behalf after January 1, 1978, shall be a debt due the state or county, as the case may be, from the estate of the decedent.

\* \* \*

4. Claims consisting of moneys paid on behalf of a recipient ... shall be allowed ... upon the showing by the claimant of proof of moneys expended. Such proof may include but is not limited to the following items which are deemed to be competent and substantial evidence of payment:

(1) Computerized records maintained by any governmental entity as described in subsection 1 of this section of a request for payment for services rendered to the recipient; and

(2) The certified statement of the treasurer or his designee that the payment was made.

\* \* \*

■ Under this statute, the Department had the burden of proving the "total amount paid" to the decedent or expended upon his behalf. Section 473.398.1. Here, the Department presented records detailing the amounts paid to Mr. Pierce or on his behalf in the form of Medicaid benefits and the services provided to Mr. Pierce. These computer records were not only entered into evidence but were verified by the testimony of the estate recovery analyst and income maintenance caseworker. This evidence is sufficient to satisfy the Department's burden of proof in an action to recoup Medicaid benefits. *See Dept. of Social Services v. Ragsdale,* 934 S.W.2d 322, 323–24 (Mo.App. 1996).

The Estate argues that the Southern District's opinion in *State, Department of Social Services v. Beckner,* 813 S.W.2d 353 (Mo. App.1991), requires a ruling in its favor. In *Beckner,* the court affirmed the trial court's ruling that the Department had failed to produce sufficient evidence in order to prevail on its action to recover public assistance benefits from the estate of a Medicaid recipient. *Id.* at 355. In so doing, the court held that the Department failed to meet its burden of proof by merely submitting a stack of documents without an explanation "as to how its sheaf of records confirmed the amount sought...." *Id.* The court noted that it could not determine the validity of the claim since the Department failed to specifically identify any record establishing or verifying the amount of the claim. *Id.* The Estate interprets *Beckner* as requiring the Department to prove that Mr. Pierce's medical expenses, for which Medicaid benefits were paid, were medically reasonable and necessary.

The Estate's interpretation of *Beckner* is misguided. The *Beckner* court did not hold that the Department was required to introduce expert testimony concerning the reasonableness and necessity of medical expenses in order to satisfy its burden of proof under § 473.398. It merely held that there should have been testimony explaining how the computerized records proved the amount of charges sought by the Department. The issue in *Beckner* was the clarity of the proof, not the nature of the proof. Nowhere in its opinion does the court reference a requirement of proving that the charges were reasonable and necessary.

■ Furthermore, the Estate bases its argument that the Department must prove the reasonableness and necessity of Mr. Pierce's medical expenses on non-applicable statutory and common law. *Cf. Frankum v. Hensley,* 884 S.W.2d 688, 691 (Mo.App.1994) (Under

§ 430.235, RSMo 1994, a hospital attempting to recover money for services provided to a patient may only recover the reasonable rates for such necessary services.); *Hagedorn v. Adams*, 854 S.W.2d 470, 477 (Mo. App.1993) ("Recovery for medical expenses incurred as a result of a defendant's negligence in a personal injury action depends upon proof of the necessity and reasonableness of the medical expenses incurred."). The law relied upon by the Estate is not persuasive because the Department's right to recover any Medicaid benefits paid is statutory in origin, and the language of the applicable statute controls. Section 430.235, RSMo 1994, used as an example by the Estate, provides that a hospital has a lien for medical services provided a patient "for the cost of such services, computed at reasonable rates not to exceed the customary charges for the services and the customary charges for necessary X-ray, laboratory, operating room and medication services...." There is no comparable language in § 473.398 referring to the reasonableness or necessity of medical services rendered as a part of the cause of action. In light of the fact that § 473.398 requires the state to prove the "total amount paid," and not the necessity and reasonableness of any medical services, the Estate's argument is without merit.

Under § 473.398, the Department met its burden of proving the total amount paid by offering into evidence the authenticated, computerized records of the funds paid to or on behalf of Mr. Pierce, as well as the explanatory testimony of Ms. Eggen, an estate recovery analyst, and Ms. Hildenbrand, an income maintenance caseworker. Point I is denied.

As its second point on appeal, the Estate contends that the trial court erred in the application of § 208.215. The Estate alleges that the trial court erred by failing to apply § 208.215 in this case because the 1996 amended version of the statute involves procedural changes in Medicaid claim recovery and distribution, and should have been applied retroactively to this case. Therefore, the Estate argues the case should be remanded to the trial court for consideration of the Department's claim under the parameters set forth in the newly-amended version of § 208.215.

Section 208.215 establishes the policy that Medicaid is the payer of last resort and the state can recover for benefits paid where a Medicaid recipient receives compensation from a third party for health services incurred as a result of personal injury, disability or disease. Section 208.215.1. The statute contemplates situations where a third party, such as an insurance carrier, individual or corporation, is held liable to pay for a Medicaid recipient's hospital care when those medical expenses have already been paid by the Department. Id. Under § 208.215.6, the "recipient, minor, guardian, conservator, personal representative, estate ... or his attorney or legal representative" is required to notify the Department of any recovery sought and to reimburse the Department from any recovery obtained.

The legislature amended the provisions of this statute in 1996, effective August 28th, 1996. Under the amended version of the statute, the trial court has the discretion to reduce the Department's portion of any recovery from a third party, whereas in the prior version, the Department had a right to the full amount of any moneys expended in the form of public assistance benefits. Section 208.215.9, as amended in 1996, provides as follows:

9. On petition filed by the department, or by the recipient ..., the court ... may adjudicate the rights of the parties and enforce the charge. The court may approve the settlement of any claim.... The court may determine what portion of the recovery shall be paid to the department against the recovery. In making this determination the court shall conduct an evidentiary hearing and shall consider competent evidence pertaining to the following matters:

(1) The amount of the charge sought to be enforced against the recovery when expressed as a percentage of the gross amount of the recovery; the amount of the charge sought to be enforced against the recovery when expressed as a percentage of the amount obtained by subtracting from the gross amount of the

recovery the total attorney's fees and other costs incurred by the recipient incident to the recovery; and whether the department should as a matter of fairness and equity, bear its proportionate share of the fees and costs incurred to generate the recovery from which the charge is sought to be satisfied;

(2) The amount, if any, of the attorney's fees and other costs incurred by the recipient incident to the recovery and paid by the recipient up to the time of the recovery, and the amount of such fees and costs remaining unpaid at the time of recovery;

(3) The total hospital, doctor and other medical expenses incurred for care and treatment of the injury to the date of recovery therefor . . . ;

(4) Whether the recovery represents less than substantially full recompense for the injury and the hospital, doctor and other medical expenses incurred to the date of recovery for the care and treatment of the injury, so that reduction of the charge sought to be enforced against the recovery would not likely result in a double recovery or unjust enrichment to the recipient;

(5) The age of the recipient and of persons dependent for support upon the recipient, the nature and permanency of the recipient's injuries as they affect not only the future employability of the recipient but also the reasonably necessary and foreseeable future material, maintenance, medical rehabilitative and training needs of the recipient . . . ;

(6) The realistic ability of the recipient to repay in whole or in part the charge sought to be enforced against the recovery when judged in light of the factors enumerated above.

As a result of this amendment to the statute, the trial court now has the discretion to reduce the amount owed the Department for repayment of Medicaid and public assistance benefits, upon consideration of the six factors enumerated above. Therefore, the Estate argues, it should have had the right to petition the trial court for a hearing to reduce the Department's portion of the recovery based on the factors in § 208.215, because the statute applies retroactively to this pending cause since it is entirely procedural in nature and does not affect the substantive rights of either party.

■ Before determining the merits of the Estate's claim concerning the retroactive application of the statute, this court must first decide whether the statute on its face applies to the facts of this case. The primary object of statutory interpretation is to determine the legislature's intent when it enacted § 208.215. "All canons of statutory interpretation are subordinate to the requirement that the Court ascertain the intent of the legislature from the language used and give effect to that intent, if possible, and to consider the words used in their plain and ordinary meaning." *Butler v. Mitchell–Hugeback, Inc.*, 895 S.W.2d 15, 19 (Mo. banc 1995). The plain and ordinary meaning of § 208.215 indicates that it applies to the facts of this case.

According to § 208.215.1, "[w]hen any person . . . is liable . . . to a recipient of public assistance on account of personal injury . . . , payments made by the department of social services shall be a debt due the state and recoverable from the liable party or recipient for all payments made in behalf of the recipient. . . . " The statute further provides in subsections 4 and 6 of § 208.215, that every "recipient, minor, guardian, conservator, *personal representative, estate,* . . . or his attorney or legal representative" must notify the Department of any claim against a third party for personal injury and must reimburse the Department for moneys spent for the recipient out of any funds recovered from a liable third party. (Emphasis added).

■ Here, Mr. Pierce's estate received a settlement from a liable third party for personal injuries Mr. Pierce sustained to his hip when he slipped and fell at a dentist's office. This situation is covered by § 208.215.1. By its terms, the statute contemplates application to benefits paid or owing to deceased recipients, because it refers to estates and personal representatives in several subsections of the statute.

The Department argues that § 208.215 does not apply to this case because it filed a *claim* against the estate under § 473.398, and not a *lien* against the Estate's recovery from the liable third party under § 208.215.8. The Department contends that § 208.215 requires the Department to file a lien against a recipient's recovery from a third party in order for the Department to collect, under that particular statute, repayment of public assistance benefits it paid on account of the same injury. According to the Department, if it does not file the "required" lien under § 208.215.8, the court does not have subject matter jurisdiction under § 208.215, and therefore the statute does not apply to the claim.

■ The applicability of § 208.215 is not dependent upon the Department filing a lien under subsection 8 of the statute. Section 208.215.1 establishes the public policy that Medicaid is the payer of last resort and, when there is a third party liable to a recipient of public assistance on account of personal injury or disability or disease for which the department has paid medical expenses, the statute creates a debt due the state from the third party in the amount of the medical assistance payments made on behalf of the recipient. The statute authorizes the Department of Social Services to collect this state debt by maintaining "appropriate" actions. Section 208.215.2. In addition to authorizing the Department to sue to collect the state debt, the statute creates a lien on the moneys owed by a third party to the recipient of public assistance. The filing of a lien is merely a mechanism that § 208.215 provides the Department to collect the state debt as its portion of any recovery from a liable third party.

Section 208.215.8 gives the Department the right to file a lien by providing that the Department *"shall have a lien* upon any moneys to be paid by any insurance company or similar business enterprise, person, corporation, institution, public agency or private agency in settlement or satisfaction of a judgment on any claim for injuries ... which resulted in medical expenses for which the department made payment." (Emphasis added). Section 208.215.8 does not require

the Department to file a lien. Therefore, even though the Department did not file a lien against the Estate's recovery from the third party in this case, § 208.215 still applies because the public assistance benefits paid on account of Mr. Pierce's injury, for which a third party was liable, is a debt due the Department. The Department chose to collect this debt, along with reimbursement for other medical assistance benefits it paid on Mr. Pierce's behalf during his lifetime, by filing a claim under § 473.398. The filing of a claim in a decedent's probate estate is an "appropriate action" as permitted by § 208.215.2.

The Department contends that because it filed its claim against the Estate pursuant to § 473.398, that particular statute applies exclusively. The Department cites to no cases or statutes for the principal that a claim filed under § 473.398 is not affected by any other statutory provision.

As applied to the facts of this case, § 473.398 and § 208.215 address the same subject matter. Mr. Pierce received public assistance benefits during his lifetime. Section 473.398.1 allows the Department to recoup the *total* amount of public assistance benefits paid from a recipient's estate. However, Mr. Pierce's estate consists solely of the proceeds from the settlement of his personal injury claim, an injury for which he received public assistance benefits. Section 208.215 allows the Department to recover payments it made on account of an injury for which the recipient's estate receives payment from a liable third party. Under the 1994 version of § 208.215, the Department was entitled to collect the *full* amount of the payments it made on account of the injury. Section 208.215.7, RSMo 1994. Thus, § 473.398 and the 1994 version of § 208.215 both allowed the Department to collect the full amount of public assistance benefits it paid.

■ However, under the amended version of § 208.215, the Department is not necessarily entitled to recover the full amount of public assistance benefits it paid on account of an injury, disability or disease for which a third party is liable. The amended version of § 208.215.9 provides a procedure whereby

the court can reduce the Department's portion of the recovery from the liable third party. This conflicts with § 473.398.1. When two statutes addressing the same subject matter conflict, statutory construction dictates that the conflict between two statutes be resolved by deferring to the more specific statute. *Greenbriar Hills v. Director of Revenue*, 935 S.W.2d 36, 38 (Mo. banc 1996). "When the same subject matter is addressed in general terms in one statute and in specific terms in another, the more specific controls over the more general." *Id.*

■ Section 208.215.9, which addresses the debt owed the Department for benefits it provided the recipient on account of an injury, disability or disease for which the recipient recovered from a liable third party, is more specific than § 473.398.1, which addresses the debt owed the Department for all of the benefits it provided the recipient. Should this court find that the amended version of § 208.215 applies retroactively to this case, § 208.215.9 would apply to that portion of the Department's claim for reimbursement for benefits it paid on account of Mr. Pierce's personal injury, even though it conflicts with § 473.398.1.

Because Mr. Pierce's estate consists of the proceeds of the settlement of his personal injury claim against a third party, and the Department made a claim against the Estate to recover medical assistance benefits it paid on account of that injury, § 208.215 applies to that portion of the Department's claim attributable to the benefits it paid on account of Mr. Pierce's personal injury. In light of the applicability of § 208.215, generally, this court must determine whether the amended version of the statute is applicable to this case, considering that it became effective on August 28th, 1996, several months after the judgment was entered on April 10, 1996.

■ Article 1, § 13 of the Missouri Constitution provides that "no ex post facto law, nor law . . . retrospective in its operation can be enacted." In accord with this constitutional provision, in Missouri, there is a presumption that statutes are to operate prospectively and not retroactively. *Callahan v. Cardinal Glennon Hosp.*, 863 S.W.2d 852, 872 (Mo. banc 1993). Although this is the general rule, there are two exceptions: "(1) when the legislature specifically provides that the statute have retroactive effect and; (2) when the statute is procedural or remedial only and the substantive rights of [the] parties are not affected." *Reinerd v. A.B. Chance Co.*, 800 S.W.2d 777, 778 (Mo.App. 1990). *See also Schweigert v. Braxton*, 902 S.W.2d 370, 372 (Mo.App.1995).

■ As for the first exception for statutes where the legislature specifically provides for retroactive effect, § 208.215 does not qualify. Missouri courts presume that a statute is to operate prospectively "unless the legislature specifically provides that the statute have retroactive effect." *State Bd. of Registration v. Warren*, 820 S.W.2d 564, 565 (Mo.App.1991). Missouri courts have also expressed the rule that a statute will be applied retroactively in the absence of express language providing for such application if it is necessary by "unavoidable implication." *Dept. of Soc. Serv. v. Villa Capri Homes*, 684 S.W.2d 327, 332 (Mo. banc 1985).

In the instant case, there is no express language in the amended version of § 208.215 indicating the legislature's intent that the statue be applied retroactively. Furthermore, after a thorough reading of the provisions of the statute, this court does not discern an "unavoidable implication" that § 208.215 should apply retroactively. The first exception does not apply to this case.

■ The Estate relies on the second exception to the rule prohibiting retrospective application of a statute. The Estate contends that § 208.215 is procedural or remedial rather than substantive in nature. For purposes of retroactivity analysis, "substantive law relates to the rights and duties giving rise to the cause of action. . . ." *Wilkes v. Mo. Highway and Transp. Com'n*, 762 S.W.2d 27, 28 (Mo. banc 1988). "Substantive statutes take away or impair vested rights acquired under existing law, or create a new obligation or impose a new duty." *Brennecka v. Director of Revenue*, 855 S.W.2d 509, 511 (Mo.App.1993). On the other hand, a statute is procedural or remedial in nature if it "prescribes a method of enforcing rights or obtaining redress for their invasion. . . ." *Wilkes*, 762 S.W.2d at 28. Remedial laws usually affect only the reme-

dy provided, and include laws that "merely substitute a new or more appropriate remedy for the enforcement of an existing right." *Faulkner v. St. Luke's Hosp.,* 903 S.W.2d 588, 592 (Mo.App.1995).

The cause of action and the rights afforded the Department under the prior and amended § 208.215 are the same: the Department has the right to bring an action to recover benefits paid when a Medicaid recipient receives compensation from a third party for health services incurred due to personal injury, disability or disease. Thus, the Department's " 'substantial right to redress by some effective procedure' " has been preserved. *Vaughan v. Taft Broadcasting Co.,* 708 S.W.2d 656, 660 (Mo. banc 1986) (quoting *Gibbes v. Zimmerman,* 290 U.S. 326, 332, 54 S.Ct. 140, 142, 78 L.Ed. 342 (1933)). The only difference between the two versions lies in the remedy allowed the Department. Payments made by the Department on account of an injury for which the recipient recovers from a third party are still a debt due the Department; however, the trial court now has the discretion to reduce the Department's portion of the recipient's recovery after consideration of the factors listed in § 208.215.9. The amended statute has thus substituted a new or more appropriate remedy for the enforcement of the Department's existing right in its cause of action to recover public assistance benefits paid. Therefore, the amended statute is remedial.[2]

■ Generally, procedural or remedial statutes are "applicable to all pending cases-that is, those cases not yet reduced to a final, unappealable judgment." *State ex rel. Faith Hosp. v. Enright,* 706 S.W.2d 852, 854 (Mo. banc 1986). Procedural or remedial amendments do not apply, however, to any part of a proceeding completed prior to the effective date of the amendment. *State v. Thomaston,* 726 S.W.2d 448, 462 (Mo.App.1987). "[T]he steps already taken, the status of the case as

to the court in which it was commenced, the pleadings put in, and all things done under the late law will stand unless an intention to the contrary is plainly manifested; and pending cases are only affected by general words as to future proceedings from the point reached when the new law intervened." *Clark v. Kansas City, St. L. & C.R. Co.,* 219 Mo. 524, 118 S.W. 40, 43 (1909). *See also Rodriguez v. Suzuki Motor Corp.,* 936 S.W.2d 104, 111 (Mo. banc 1996) (adoption of higher standard of proof for punitive damages was procedural change which was only applicable to trials commenced after opinion in *Rodriguez* was final and to pending cases in which a proper objection had been preserved); *City of Branson v. Biedenstein,* 618 S.W.2d 665, 671 (Mo. banc 1981) (amendment to procedural statute that established requirements as conditions precedent to annexation found applicable after judgment entered, since it did not involve a requirement "which, if observed, would require invalidation of what has already been done or would require that which it is now too late to do.").

■ The amendment to § 208.215 became effective on August 28, 1996, after judgment had been entered and the Estate filed its notice of appeal. Although the case was pending when the statute became effective, application of § 208.215.9 would require this court to remand the case for a redetermination of issues already resolved by the trial court, and thus would invalidate what has already been done. Therefore, even though § 208.215.9 is remedial, it cannot be applied in this cause.

The judgment of the trial court is affirmed.

All concur.

---

**2.** *State ex rel. St. Louis-San Francisco Ry. Co. v. Buder,* 515 S.W.2d 409 (Mo. banc 1974), and cases following its precedent, conclude that a defendant has a vested right in a cap on liability, so any amendment reducing or eliminating the cap is not applied retroactively. The validity of its reasoning in reaching this conclusion does not appear to be fully consistent with subsequent Missouri Supreme Court cases which hold that amendments to remedial statutes are to be retro-

actively applied. *See Vaughan v. Taft Broadcasting Co.,* 708 S.W.2d 656 (Mo. banc 1986); *Wilkes v. Mo. Highway and Transp. Com'n,* 762 S.W.2d 27 (Mo. banc 1988). It is not clear how the Supreme Court would currently resolve the issue of whether a statutory amendment reducing or eliminating a cap on liability should be retroactively applied. However, we are not required by the issues in this case to resolve such issue.